# United States Court of Appeals for the Federal Circuit

---

**BETEIRO, LLC,**
*Plaintiff-Appellant*

**v.**

**DRAFTKINGS INC., POINTSBET USA, INC., BETMGM, LLC, HILLSIDE NEW JERSEY LLC, BETFAIR INTERACTIVE US LLC, TSG INTERACTIVE US SERVICES LTD. CORP., ODS TECHNOLOGIES LP, KINDRED GROUP PLC, TRANNEL INTERNATIONAL, LTD., UNIBET INTERNATIONAL, LTD., UNIBET INTERACTIVE, INC.,**
*Defendants-Appellees*

---

2022-2275, 2022-2277, 2022-2278, 2022-2279, 2022-2281, 2022-2283

---

Appeals from the United States District Court for the District of New Jersey in Nos. 1:21-cv-20148-CPO-SAK, 1:21-cv-20155-CPO-SAK, 1:21-cv-20156-CPO-SAK, 1:21-cv-20158-CPO-SAK, 1:22-cv-00577-CPO-SAK, 1:22-cv-01536-CPO-SAK, Judge Christine P. O'Hearn.

---

Decided: June 21, 2024

---

MICHAEL SCOTT FULLER, Garteiser Honea. PLLC, Tyler, TX, argued for plaintiff-appellant. Also represented by

RANDALL T. GARTEISER, CHRISTOPHER A. HONEA.

ELIOT DAMON WILLIAMS, Baker Botts LLP, Washington, DC, argued for defendant-appellee DraftKings Inc. Also represented by JAMIE ROY LYNN; GEORGE HOPKINS GUY, III, Palo Alto, CA; ROBERT LAWRENCE MAIER, New York, NY; CLARKE STAVINOHA, Dallas, TX.

ELISABETH S. THEODORE, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for defendants-appellees BetMGM, LLC, BetFair Interactive US LLC, Hillside New Jersey LLC, Kindred Group PLC, ODS Technologies LP, PointsBet USA, Inc, Trannel International, Ltd., TSG Interactive US Services Ltd. Corp., Unibet Interactive, Inc., Unibet International, Ltd. Defendant-appellee BetMGM, LLC also represented by PATRICK BRODIE HALL, EVAN M. ROTHSTEIN, Denver, CO.

MEGAN J. REDMOND, Erise IP, P.A., Overland Park, KS, for defendants-appellees BetFair Interactive US LLC, ODS Technologies LP, TSG Interactive US Services Ltd. Corp. Also represented by CAROLINE A. BADER, ERIC ALLAN BURESH.

ARTHUR ZORIO, Brownstein Hyatt Farber Schreck LLP, Reno, NV, for defendant-appellee Hillside New Jersey LLC.

MARK MICHAEL SUPKO, Crowell & Moring, LLP, Washington, DC, for defendants-appellees Kindred Group plc, Trannel International, Ltd., Unibet International, Ltd., Unibet Interactive, Inc.

CHARLES KRAMER VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, for defendant-appellee PointsBet USA, Inc. Also represented by JARED WESTON NEWTON, Washington, DC.

————————————————

Before DYK, PROST, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Beteiro, LLC ("Beteiro") appeals from a judgment entered by the United States District Court for the District of New Jersey dismissing its multiple related patent infringement cases for failure to state a claim based on the subject matter ineligibility of the patent claims. We affirm.

## I

Beteiro owns U.S. Patent Nos. 9,965,920 ("the '920 patent"), 10,043,341 ("the '341 patent"), 10,147,266 ("the '266 patent"), and 10,255,755 ("the '755 patent") (collectively, the "Asserted Patents"). All of the Asserted Patents share a common specification and title: "Apparatus and Method for Facilitating Gaming Activity and/or Gambling Activity." The Asserted Patents disclose a purported invention which "facilitate[s] gaming activity and/or gambling activity at a gaming venue remote from the user's or individual's physical location" such that the user can "participate in live gaming activity and/or gambling activity via a user communication device" even if the user is not in the same location as the gaming venue. '920 patent at 3:9-14.[1]

The '920 patent explains that "many individuals enjoy gambling" but "may not always have access to particular gaming venues or gaming activities," for reasons including that the individuals may be located in a jurisdiction in which gambling is not lawful. *Id.* at 1:44-47. As a solution, the patent describes a preferred embodiment in which "a user can access a . . . gaming facility computer 30 via the user communication device 20 and place a bet, wager, and/or otherwise engage in gaming activity and/or

---

[1]    For ease of reference, we limit our specification citations to the '920 patent.

gambling activity." *Id.* at 79:41-45. The "gaming facility computer 30 can determine if the remote gaming activity and/or gambling activity is allowed by the state having jurisdiction" over the individual by determining the location of that individual. *Id.* at 80:38-39. The patent describes ascertaining the user's location through the use of a global positioning system ("GPS") included in "user communication device(s)." *Id.* at 8:38-41. One embodiment describes the GPS equipped on a mobile device such as a mobile phone:

> In another preferred embodiment, wherein the user communication device 20 is a wireless communication device and/or a mobile communication device (i.e. personal digital assistant, wireless videophone, wireless telephone, or palm-held device, etc., which can be equipped with a global positioning system (GPS) device 20J), the location of the user communication device 20 and, therefore, the location from which the gaming activity and/or gambling activity originates and/or from which it takes place can be determined by the user communication device 20 automatically transmitting position data and/or information to the respective central processing computer 10 and/or gaming facility computer 30 at the time of the user's accessing of the respective central processing computer 10 and/or gaming facility computer 30.

*Id.* at 80:10-24. Notably, the above-quoted portion of the specification is the only description anywhere in the very lengthy specification of a GPS equipped on a mobile phone.

Independent claim 2 of the '755 patent, which the district court, the parties, and we agree is representative for purposes of evaluating the issue of patentable subject matter, *see* J.A. 9-10, recites:

A computer-implemented method, comprising:

detecting, with or using a computer which is specially programmed for processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event, a posting of information regarding the gaming activity, the gambling activity, or the sporting event;

generating, with or using the computer, a notification message regarding the gaming activity, the gambling activity, or the sporting event;

initiating, with or using the computer, a communication link with a first communication device and transmitting the notification message to the first communication device as an electronic transmission, or transmitting, from the computer, the notification message as an electronic mail message, wherein the electronic mail message is received by or received at a first communication device, wherein the first communication device is associated with an individual;

receiving, with the computer, a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further *wherein the first communication device or the second communication device comprises a global positioning device*, wherein the global positioning device determines a position or location of the first communication device or the second communication device, and further wherein the bet message contains information regarding a bet to be placed on or regarding the gaming activity, the gambling activity, or the sporting event, and information regarding the position or location of the first communication device or the second communication device; and

> determining, with or using the computer, whether the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, processing information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, processing information for disallowing the bet.

'755 patent at 95:1-42 (emphasis added).

During prosecution of three of the Asserted Patents, the patent examiner expressly evaluated the eligibility of the claims under 35 U.S.C. § 101 and found them eligible based on their requirement of a particular machine or processor. *See* J.A. 617-19.

In 2021 and 2022, Beteiro filed at least six cases in the District of New Jersey maintaining essentially identical patent infringement claims against DraftKings, Inc.; PointsBet USA, Inc.; BetMGM, LLC; Hillside New Jersey LLC; BetFair Interactive US LLC; and Kindred Group plc (hereinafter "Appellees"). Beteiro alleged that Appellees infringe certain claims of the Asserted Patents by "provid[ing] a plurality of gambling and event wagering services." J.A. 4. Appellees each filed Rule 12(b)(6) motions to dismiss on the grounds that the asserted patents claim nonpatentable subject matter under 35 U.S.C. § 101. In a concise, careful opinion, the district court granted all of the motions. J.A. 1-20. The court then denied Beteiro's motions for reconsideration, and Beteiro timely appealed.[2]

---

[2] The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1400(b). We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review issues not unique to patent law, including a Rule 12(b)(6) dismissal, under the law of the regional circuit, in this case the Third Circuit. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1346 (Fed. Cir. 2018). The Third Circuit reviews Rule 12(b)(6) dismissals for failure to state a claim de novo. *See Endo Pharms. Inc. v. Teva Pharms. USA, Inc*, 919 F.3d 1347, 1352 (Fed. Cir. 2019) (citing *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007)).

Patent eligibility, governed by 35 U.S.C. § 101, is evaluated according to Federal Circuit law, and presents "a question of law, based on underlying facts." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). We evaluate claims challenged under Section 101 by applying the now-familiar two-step *Alice/Mayo* framework. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216-24 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-80 (2012). At step one, we consider "whether the claims at issue are directed to [a] patent-ineligible concept" such as an abstract idea. *Alice*, 573 U.S. at 217. If they are, then we proceed to step two, at which "we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotation marks omitted). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## III

Reviewing the matter de novo, we agree with the district court's application of the *Alice/Mayo* test. The challenged claims of the Asserted Patents are directed to an

abstract idea and do not contain an inventive concept. Beteiro's arguments to the contrary lack merit.

### A

At step one, we agree with the district court that Beteiro's claims are directed to the abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." J.A. 13. In reaching this conclusion, the district court accepted Appellees' accurate characterization of the representative claim as consisting of the following series of abstract steps:

> (1) detecting information about a gambling activity; (2) generating and transmitting a notification message regarding the activity to a user; (3) receiving a bet message that includes information regarding a bet to be placed and the location of the user; (4) determining whether the bet is allowed or disallowed using the location information; and (5) processing information for placing the bet or disallowing the bet.

*Id.*

The claims before us today exhibit several features that are well-settled indicators of abstractness. First, the claims broadly recite generic steps of a kind we have frequently held are abstract: detecting information, generating and transmitting a notification based on the information, receiving a message (bet request), determining (whether the bet is allowed based on location data), and processing information (allowing or disallowing the bet). *See, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts."); *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed Cir. 2016) (finding "a process of

gathering and analyzing information of a specified content, then displaying the results" abstract); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (finding "tailoring content based on the [user's] location" abstract); *buySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claiming "a computer receiv[ing] and send[ing] information over a network – with no further specification – is not even arguably inventive").

Second, and as can be seen, the claims are drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results. Claims of this nature are almost always found to be ineligible for patenting under Section 101. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

Third, we have several precedents in which we have concluded that broadly analogous claims, such as those involving methods of providing particularized information to individuals based on their locations, to be abstract. *See, e.g.*, *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (claims involving "conveying regional content to out-of-region recipients"); *Intell. Ventures I*, 792 F.3d at 1369 (claims to "providing different newspaper inserts based upon the location of the individual"); *see also generally Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply [to Section 101 cases] is to

examine earlier cases in which a similar or parallel descriptive nature can be seen.").[3]

Fourth, the district court was able to persuasively analogize Beteiro's patent claims to longstanding "real-world" ("brick and mortar") activities. *See* J.A. 14. A claimed method's similarity to "fundamental . . . practices long prevalent" is yet another clue that the claims may be abstract and unpatentable. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (internal quotation marks and brackets omitted). For example, the district court compared the claimed method to the actions of a teller at a casino that straddled state lines, who "had to ensure patrons were on the Nevada side of the building . . . before accepting a bet." J.A. 15. The district court pointed out that "[t]hose accepting bets have *always* had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed." J.A. 14-15. It follows, as the district court rightly found, that the claims here are directed to a fundamental and longstanding economic activity, i.e., an abstract idea. *See generally Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) ("[T]he

---

[3] Notable, but not authoritative, is the fact that we have non-precedentially affirmed several district court findings of ineligibility of remote-gaming patents that are analogous to those before us today. *See, e.g., CG Tech. Dev., LLC v. FanDuel, Inc.*, 858 F. App'x 363 (Fed. Cir. 2021) (summarily affirming 442 F. Supp. 3d 840, 849-50 (D. Del. 2020), which found abstract, and nonpatentable, claims directed to "real-world need to address the implications of differing jurisdictions and their effect on permitted game configurations"); *NEXRF Corp. v. Playtika Ltd.*, 2022 WL 1513310 (Fed. Cir. 2022) (summarily affirming 547 F. Supp. 3d 977, 991-92 (D. Nev. 2021), which found abstract, and nonpatentable, claims directed to "incentivizing gambling tailored to a user's location").

district court's recognition at the pleadings stage in the context of § 101 of the century-old practice . . . concerns a pertinent fundamental . . . concept[] and technological development[] [and] is well supported by our precedents.") (internal quotation marks omitted).

Notwithstanding all of these indications that the challenged claims of the Asserted Patents are directed to an abstract idea, Beteiro contends they are not, on the grounds that the claims are allegedly tied to technological improvements. "In the realm of computer-related technology, such as in this case, patent claims may be non-abstract at *Alice* step one if the focus of the claimed advance is on an improvement in computer technologies, rather than the mere use of computers." *AI Visualize*, 97 F.4th at 1378. Like the district court, we reject Beteiro's contention. The Asserted Patents involve the mere use of computers as tools and do not claim any improvement in the computer-related technology itself. As Appellees put it, "the issue of remote gambling being uncommon in 2002 was not a technical problem, nor do the Asserted Claims' invocation of technology developed by others constitute a solution." Appellee Br. at 11-12. Content regulation and checking legal compliance are rooted in the abstract – they are legal problems, not technical problems – and the claims here do not provide "a specific improvement to the way computers operate." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Having concluded that the claims are directed to an abstract idea at step one, we proceed to review the district court's analysis at step two.

B

At step two, the district court found that the representative claim failed to provide an inventive concept because it achieved the abstract steps "using several generic computers – namely, a 'computer,' a 'communication link,' a 'first communication device,' a 'second communication

device,' and a 'global positioning device.'" J.A. 17-18. The district court thus concluded that "claim 2 simply describes a conventional business practice . . . executed . . . by generic computer components" which "cannot survive Step 2." *Id.* at 18. We agree.

The ultimate determination of *Alice* step two, i.e., "[w]hether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed," is a question of law that may be "inform[ed]" by "[u]nderlying factual determinations," such as "whether a claim limitation or combination of limitations is well-understood, routine, and conventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

We are unpersuaded by Beteiro's contention that its complaint raised a genuine dispute as to whether the inclusion of GPS on a mobile phone was conventional technology in 2002, the earliest claimed priority date of the Asserted Patents. There is no plausible, non-conclusory allegation that the claimed GPS is anything other than part of, as the district court put it, "a set of generic computer components." J.A. 18. The Asserted Patents repeatedly, but briefly, refer to conventional use of GPS in connection with several types of conventional computers, including a central processing computer, user communication device, gaming facility computer, financial institution computer, and escrow agent computer. *See* '920 patent at 43:17-38, 44:19-58, 46:41-62, 48:28-49, 50:14-35. Nowhere does the specification describe any difference between how GPS would be equipped on a mobile phone and how it would be equipped on any of the other described conventional computers. Where, as here, the specification "describes the components and features listed in the claims generically," it "support[s] the conclusion that these components and features are conventional." *Weisner v. Google LLC*, 51 F.4th 1073, 1083-84 (Fed. Cir. 2022).

We excerpted earlier in this opinion the entirety of the Asserted Patents' discussion of the use of GPS in a mobile communication device (e.g., mobile phone). *See supra* Part I. That only 15 lines out of a specification that runs to no less than 98 columns are addressed to what Beteiro now insists is unconventional technology greatly undermines the plausibility of Beteiro's allegations. The inventors do not in the specification purport to have advanced GPS or mobile device technology; they provide no description whatsoever of any hardware or software for equipping GPS on a mobile device. In context, this can only plausibly mean that the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew what GPS was, how to include it on a mobile device, and that using it for the purposes disclosed in the patent was routine, conventional, and well-understood.

Beteiro's complaint attempts to raise a factual dispute as to whether use of GPS in connection with gaming was anything other than conventional, routine, and well-understood at the priority date of the patent, but it fails to do so. Beteiro focuses our attention on, for instance, the complaint's allegations that, as of the 2002 priority date, "the use of geolocation and global positioning as an integral data point in the processing of mobile wagers was still many years away;" the "sufficient[ly] sensitiv[e]" GL20000 GPS Chip – as well as the iPhone and app-store – had not yet been introduced; and "the current industry leader in the space – GeoComply – did not even exist until 2011." J.A. 622 ¶¶ 27-28; *see also* J.A. 626 ¶ 36. Given what is taught in the Asserted Patents themselves – and, most particularly in this case, what is *not* taught, which in context reinforces that a person of ordinary skill in the art would have recognized the claims to involve nothing more than conventional, routine, and well-understood use of GPS – no amount of creative pleading could have succeeded in transforming the claims into patent-eligible subject matter such

that Beteiro's complaint states a claim on which relief could be granted.

As we quite recently summarized:

Conclusory allegations, or those "wholly divorced" from the claims or the specification, cannot defeat a motion to dismiss. And a patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art.

*AI Visualize*, 97 F.4th at 1380 (internal citations omitted). While we must accept all of the complainant's well-pleaded factual allegations as true and draw all reasonable inferences from them, "generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage" do not prevent a district court from granting a motion to dismiss, nor us from affirming such a dismissal. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023). The complaint's allegations we confront today are wholly divorced from the Asserted Patents and, as in *AI Visualize*, 97 F.4th at 1380, do not defeat the motion to dismiss.

Like the district court, we reject Beteiro's reliance on *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019). As the district court observed, Beteiro's allegations are "unlike the specific and detailed allegations" we considered in *Cellspin*. J.A. 19. We found the complaint in *Cellspin* sufficient to preclude dismissal because it alleged "specific, plausible factual allegations about why aspects of its claimed inventions were not conventional," including by "identif[ying] several ways in which its [claimed] application of capturing, transferring, and publishing data was unconventional," and rooting these allegations in the patent-in-suit. *Cellspin*, 927 F.3d at 1316-18. Beteiro's allegations, by comparison, are neither specifically tied to the claimed invention nor, as we have explained, plausible (in

light of the specification's description of generic technology).

Additionally, a patent examiner's consideration of Section 101 issues does not "in any way shield the patent's claims from Article III review for patent eligibility." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020). In any event, the examiner applied pre-*Alice* caselaw, *see* J.A. 675, and did not distinguish our many post-*Alice* cases holding that the "physicality" of what is claimed "is not by itself enough to exempt the claims from being directed to an abstract idea" and being found ineligible for patenting. *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019); *see also Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1384-85 (Fed. Cir. 2018) (finding ineligible claims involving printing and handling physical election ballots); *In re TLI*, 823 F.3d at 611 ("While [the claim] requires concrete, tangible components . . . the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea . . . .").

In the end, Beteiro's claims amount to nothing more than the practice of an abstract idea using conventional (even as of 2002) computer equipment, including GPS on a mobile phone. Such claims are not eligible for patent under current Section 101 jurisprudence. *See, e.g.*, *Alice*, 573 U.S. at 223 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *BSG Tech.*, 899 F.3d at 1290-91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). Accordingly, the district court rightly dismissed the complaints.

IV

We have considered Beteiro's remaining arguments and find them unpersuasive. Accordingly, for the reasons set out above, the district court's dismissal of Beteiro's complaints is affirmed.

**AFFIRMED**