# United States Court of Appeals for the Federal Circuit

---

**GOTV STREAMING, LLC,**
*Plaintiff-Appellant*

**v.**

**NETFLIX, INC.,**
*Defendant-Cross-Appellant*

---

2024-1669, 2024-1744

---

Appeals from the United States District Court for the Central District of California in No. 2:22-cv-07556-RGK-SHK, Judge R. Gary Klausner.

---

Decided:  February 9, 2026

---

AMIR H. ALAVI, Alavi & Anaipakos PLLC, Houston, TX, argued for plaintiff-appellant.  Also represented by JUSTIN CHEN, SCOTT W. CLARK, CONNIE FLORES JONES, CHRISTOPHER RYAN PINCKNEY; DAVID STEIN, Olson Stein LLP, Newport Beach, CA.

THOMAS SAUNDERS, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for defendant-cross-appellant.  Also represented by MARK CHRISTOPHER FLEMING, Boston, MA; LAUREN MATLOCK-COLANGELO, New York, NY; ALIZA GEORGE CARRANO, Willkie Farr & Gallagher LLP, Washington, DC; DEVON WESLEY EDWARDS, New

York, NY; STEPHEN MARSHALL, INDRANIL MUKERJI, Coving-
ton & Burling LLP, Washington, DC.

————————————

Before PROST, CLEVENGER, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

GoTV Streaming, LLC owns the three related U.S. Pa-
tent Nos. 8,478,245, 8,989,715, and 8,103,865 at issue here.
Those patents claim methods and systems involving a
server that receives a request for content from a wireless
device, delivers the requested content to the device for the
device to render (*i.e.*, for visual content, to place on the de-
vice's screen), and has tailored the specifications for the to-
be-rendered content to the screen size or other capabilities
of the requester's device.  GoTV sued Netflix, Inc., alleging
that Netflix directly infringed and induced infringement of
all three patents.  We have before us GoTV's appeal and
Netflix's cross-appeal from a final judgment granting some
relief to GoTV.

Before trial, the district court dismissed GoTV's claims
of induced infringement and rejected Netflix's challenge to
the asserted claims as ineligible for patenting under 35
U.S.C. § 101.  The court, when construing some claim
terms, held all asserted claims of the '865 patent invalid for
indefiniteness, and it also denied GoTV's request to exclude
certain of Netflix's proposed damages evidence.  A jury trial
was held on one claim from each of the '245 and '715 pa-
tents, after which the jury found that Netflix infringed only
the '715 patent and awarded GoTV $2.5 million in dam-
ages, representing a life-of-patent lump sum starting from
the filing of this action (GoTV having disclaimed pre-com-
plaint damages).  The district court denied several of
GoTV's post-trial motions, including a request for retrial of
damages because of allegedly improper Netflix damages
evidence and a request for prejudgment interest from

before the complaint's filing.  The court entered final judgment, from which GoTV appeals and Netflix cross-appeals.

We hold, on Netflix's cross-appeal, that the claims at issue are ineligible for patenting under § 101.  In considering the claims' meaning for purposes of that issue, we reverse the district court's holding that an element of the '865 patent claims was indefinite, and we adopt GoTV's construction of that element.  Our ineligibility conclusion requires reversal of the district court's judgment and entry of judgment in the case for Netflix.  We therefore do not rule definitively on GoTV's arguments on appeal other than its challenge to the district court's indefiniteness ruling.  But because GoTV has raised substantial arguments against the district court's no-inducement ruling and allowance of certain damages evidence presented by Netflix, we expressly vacate those rulings of the district court.

## I

### A

The '865 patent issued in January 2012, the '245 patent in July 2013, and the '715 patent in March 2015.  The three patents share a written description, which dates to 2007, that describes using a server for tailoring, to a particular wireless device's capabilities, the presentation specifications for requested content delivered to that device for it to render.  Because the written description is shared, we cite only the '865 patent when discussing the written description.  The claims of the '865 and '715 patents focus on operations performed by the server, while the claims of the '245 patent focus on certain so-called client-side operations, *i.e.*, operations performed by the wireless device or its user.

The patents begin by identifying a problem in the prior art, which we will recount by discussing only content for *visual* presentation (display), ignoring for simplicity's sake content for *audio* presentation that is also covered by the patents.  Because wireless devices vary in screen size,

resolution, color palettes, and other properties, including processing capabilities for dynamic content (such as videos), it was known that the quality of a display of content from a software application on a particular device is improved by tailoring the display specifications (the details of what is to be rendered for display) to the capabilities of the device displaying the content. *See* '865 patent, col. 1, lines 47–57. For example, it is preferable that content to be rendered on a device fit the display-size and resolution constraints of that device. *Id.*, col. 1, lines 40–46. One prior-art solution, the patents say, involved software developers building applications "from the ground up" for each type of wireless device, tailoring display specifications to each type (*e.g.*, brand, model). *Id.*, col. 1, lines 50–60. The patents do not elaborate on specifics of the prior-art tailoring process, such as software developers' starting point or use of a computer for the adaptation process. With brands and models of wireless devices proliferating, the patents say, such a process of developing device-tailored applications had become costly, *id.*, col. 1, lines 47–50, and patching and updating had become time-consuming, *id.*, col. 2, lines 29–31.

The patents propose to reduce the device-specific-tailoring burden by introducing a server that, when a user requests certain application content, accesses a version of that content containing at least some "generic" display specifications—"generic" simply meaning "not specific to any device or any set of device capabilities," *id.*, col. 6, lines 11–13—and performs tailoring of the display specifications to capabilities of the requesting wireless device. *Id.*, col. 2, lines 36–41; *id.*, col. 2, line 46, through col. 4, line 27. Thus, in processes described by the patents, when a user of a wireless device seeks application content online, the device communicates to a server what is being sought and at least what type of device it is. *Id.*, col. 3, lines 4–6. (The user's communication may specify capabilities of that type of device or it may simply identify the type, leaving the server to obtain the capability information elsewhere. *Id.*; *see also*

*id.*, col. 3, lines 26–29.) The server accesses a generic version of the requested content and forms a "generic template or page description" with general layout information for the page to be displayed (*e.g.*, arrangement and relative sizes of components such as images, but not absolute sizes). '865 patent, col. 3, lines 31–43; *id.*, col, 3, line 63, through col. 4, line 1; col. 13, lines 26–37; col. 17, lines 49–53. The server then "tailors the template based on the device profile and device capability," such as screen dimension. *Id.*, col. 3, lines 53–54. In addition, the server generates "custom configurations," *id.*, col. 3, lines 12–25—synonymously, "configuration data," *id.*, col. 8, lines 3–5—which provide the "look and feel" of the particular application content on the screen *and* is "specific to" the wireless device and its capabilities, *id.*, col. 3, lines 16–17, 22–25. *See id.*, col. 8, lines 6–20 (describing configuration data as determining the "text fonts, text colors, background colors, background images, border thickness, border colors, frame colors of menus, [and] style of menus," among other content preferences).

The server sends the custom configurations to the wireless device unless the device has them already. *Id.*, col. 3, lines 19–22. The server puts configuration data into "rendering blocks," containing specific "rendering commands," *id.*, col. 2, lines 53–65; col. 4, lines 9–15—with a "rendering command" simply being any "description for rendering a page component, such as the width or the height of the component" (not necessarily in the form of "instructions"). *GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-RGK-SHK, 2023 WL 6192744, at *2–4 (C.D. Cal. Sept. 11, 2023) (*Summary Judgment Decision*). The server sends the rendering blocks to the wireless device as "a series of low level basic commands that layout content, position, etc. for rendering application content on the wireless device." *Id.*, col. 2, lines 47–50.

The server also translates the generic template into a "series of basic commands based on the device profile and

device capabilities," *id.*, col. 3, lines 56–59, and sends them to the wireless device for rendering, *id.*, col. 4, lines 1–2. "Basic commands" are a subset of "rendering commands" that are "written in a device independent syntax but tailored based on the wireless device capability." *Id.*, col. 3, lines 59–60; *see id.*, col. 2, lines 51–52 (commands are "of a *generic syntax*" but are "*device specific in their parameters*") (emphases added); col. 11, lines 1–3; col. 13, lines 22–25; col. 18, lines 60–62. Basic commands sent from the server include, for example, "descriptions for rendering an image by specifying the Cartesian coordinates . . . of a screen region." *Id.*, col. 16, lines 4–8.

Overall, the patents describe a wireless device receiving from the server page descriptions and configuration data in a language readable by the device and at least partly within the device's rendering capabilities, allowing the device to display the desired content. *Id.*, col. 20, lines 59–63. Independent claim 1 of the '865 patent, which GoTV treats here as representative for eligibility purposes, reads:

1. A server implemented method for processing data for a wireless device, comprising:

receiving from the wireless device a request for an application program, said request including an indication of a type of the wireless device;

executing, in response to receiving said request, said application program to generate a wireless device generic template including a plurality of content items;

sending a custom configuration to the wireless device, said custom configuration being specific to said application program;

generating a page description based on said wireless device generic template and a capability of the wireless device, said page description having at least one discrete low level rendering command

that is within said rendering capability of said wireless device but that is of a syntax that is wireless device generic; and

sending said page description to the wireless device such that the wireless device is capable of presenting at least one content item from said plurality of content items using both said page description and said custom configuration.

'865 patent, col. 20, lines 42–63. The claim requires just two content items in a non-device-specific template, one custom configuration (identifying an aspect of look and feel), and one page description based on the generic template containing one page component tailored for the device's capability presented in device-nonspecific syntax.

B

In October 2022, GoTV sued Netflix for infringement of all three patents. J.A. 934. The next month, GoTV amended its complaint, adding claims for induced infringement of the three asserted patents based on Netflix's knowledge of the patents as of the filing of the original complaint. J.A. 999–1000; J.A. 1012–13; J.A. 1025–26. The district court granted Netflix's motion to dismiss GoTV's induced infringement claims in February 2023, holding that GoTV could not adequately state such claims unless Netflix had pre-suit knowledge of GoTV's asserted patents. *See GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-RGK-SHK, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023).

Shortly thereafter, Netflix sought, under Federal Rule of Civil Procedure 12(c), judgment on the pleadings that the claims of all three patents claim patent-ineligible subject matter and should thus be held invalid under 35 U.S.C. § 101. J.A. 1216. GoTV opposed, including (as relevant here) an expert declaration, and suggested conversion of the motion, under Rule 12(d), to one for summary

judgment. In May 2023, the district court denied Netflix's § 101 motion, ruling that the patent claims are not directed to ineligible matter under the first step of the analysis required by *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), thus ending the analysis without need to rule on the second step or to consider the GoTV-submitted expert declaration. *See GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-RGK-SHK, 2023 WL 4239824, at *2 n.1, *5 (C.D. Cal. May 24, 2023). Notably, in October 2023, after partial claim constructions had been issued, *see Summary Judgment Decision*, at *2–7, the parties jointly stipulated to entry of judgment against the § 101 challenge, stating that the court had definitively rejected the § 101 challenge in May and "Netflix [did] not waive[ ] any rights it may have regarding [its § 101] defense." J.A. 78. The court issued an order entering the stipulated judgment rejecting the § 101 challenge. *Id.*

The court issued its claim constructions in ruling on the parties' cross-motions for partial summary judgment. In the ruling, the court agreed with Netflix that a phrase common to all claims of the '865 patent—"discrete low level rendering command"—is indefinite. *Summary Judgment Decision*, at *5. On that basis, the court held all claims of the '865 patent to be invalid under 35 U.S.C. § 112(b). *Id.* at *11.

Before trial, GoTV moved to exclude portions of Netflix's technical and damages experts' opinions bearing on the issue of damages. J.A. 5390; J.A. 7608. GoTV argued that the challenged evidence improperly relied on licenses and agreements that were not technically or economically comparable to the hypothetical license that would have been negotiated had the parties negotiated such a license for Netflix to use the patented technology. J.A. 5400–11; J.A. 7614–30. The district court denied GoTV's exclusionary motions at a brief pretrial hearing. J.A. 69–71.

The case proceeded to trial in October 2023. *See* J.A. 262–64. At trial, GoTV made several objections to Netflix's expert testimony and Netflix's use of a demonstrative it created and put before the jury when cross-examining GoTV's expert. *See, e.g.*, J.A. 631–33. The district court sustained GoTV's objection when Netflix attempted to move the demonstrative into evidence but otherwise did not sustain GoTV's other objections to Netflix's experts' testimony. *See, e.g., id.* Claim 4 of the '715 patent and claim 16 of the '245 patent went to the jury after a three-day trial. The jury found that Netflix infringed claim 4 of the '715 patent (but not claim 16 of the '245 patent), and it awarded GoTV $2.5 million in damages as a life-of-patent lump sum, starting from the filing of the suit. J.A. 9980–81.

Subsequently, the court denied GoTV's post-judgment motions, including GoTV's reiteration of its objections to Netflix's damages presentations. J.A. 10900; J.A. 11364; J.A. 11381; J.A. 104. In a separate order regarding pre-judgment interest, the court rejected GoTV's argument that such interest should run from March 24, 2015, the date that the '715 patent issued. *See GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-RGK-SHK, 2024 WL 1832392, at \*2 (C.D. Cal. Jan. 16, 2024) (*Prejudgment Interest Decision*). The district court concluded that GoTV's stipulation not to seek pre-suit damages precluded awarding interest before the date of suit. *See Prejudgment Interest Decision*, at \*2; J.A. 1406.[1]

---

[1]    In late 2024, the Patent Trial and Appeal Board issued final written decisions in inter partes reviews (IPRs) involving Netflix's obviousness challenges to many claims of the '245, '715, and '865 patents. *See Netflix, Inc. v. GoTV Streaming, LLC*, IPR2023-00757, 2024 WL 4682519 (P.T.A.B. Nov. 5, 2024) (*'715 Final Written Decision*);

GoTV now appeals the district court's decisions (1) dismissing its induced-infringement claims; (2) granting summary judgment of invalidity for indefiniteness of the asserted claims of the '865 patent; (3) declining to award prejudgment interest dating back to March 24, 2015; and (4) admitting certain of Netflix-submitted evidence and allowing a Netflix demonstrative regarding damages. Netflix cross-appeals the district court's § 101 determination. We have jurisdiction to review the district court's decisions under 28 U.S.C. § 1295(a)(1).

## II

## A

We address Netflix's cross-appeal of the district court's rejection of its § 101 challenge, which is case dispositive if we agree with Netflix (as we do). Under *Alice*'s two-step approach, at step one "we determine whether a claim is directed to a patent-ineligible concept, here an abstract idea,"

---

*Netflix, Inc. v. GoTV Streaming, LLC*, IPR2023-00758, 2024 WL 4682507 (P.T.A.B. Nov. 5, 2024) (*'245 Final Written Decision*); *Netflix, Inc. v. GoTV Streaming, LLC*, IPR2023-00759, 2024 WL 4604528 (P.T.A.B. Oct. 29, 2024) (*'865 Final Written Decision*). The Board rejected Netflix's challenges to claims 1–20, 31, and 34 of the '865 patent, *'865 Final Written Decision*, at *36, and Netflix has not appealed from that decision. The Board held claim 4 and other claims of the '715 patent unpatentable for obviousness, while upholding other claims, *'715 Final Written Decision*, at *57, and it held claim 16 and other claims of the '245 patent unpatentable for obviousness, while upholding other claims, *'245 Final Written Decision*, at *57. GoTV's appeals from the '715 and '245 IPR decisions are before our court as consolidated cases, *GoTV Streaming, LLC v. Netflix, Inc.*, Nos. 25-1588 and 25-1589.

and if the answer is yes, at step two "we review whether the claim recites elements sufficient to transform it into a patent-eligible application of the abstract idea." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024). "We review decisions of § 101 patent eligibility de novo. Patent eligibility is a question of law that may be based on underlying factual findings." *Id.* at 1366 (internal citation omitted); *see SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

In this case, the district court ruling was limited to *Alice* step one: It held that the claims at issue were not directed to abstract ideas and therefore did not proceed to step two. But both parties before us ask us to decide whether the claims are saved from ineligibility at *Alice* step two if we conclude, contrary to the district court, that they are directed to abstract ideas. Neither party suggests a remand. In particular, GoTV nowhere suggests that there are factual issues for a finder of fact to resolve *or* that it wishes to develop any additional evidence, instead relying entirely on the patent specification and the expert declaration it submitted to the district court. GoTV Reply & Cross-Appellee (Yellow) Br. at 56–62; *id.* at 60 (relying simply on GoTV Opening Br. at 4–8 (background) and J.A. 1286–95 (expert declaration)). Concluding that the claims here are directed to abstract ideas, we therefore proceed to address the application of *Alice* step two on this record.

GoTV has simplified the ineligibility analysis required in this appeal. GoTV makes no separate arguments regarding eligibility for the three asserted patents; specifically, it nowhere argues that, if claim 1 of the '865 patent is invalid for ineligibility, other asserted claims are eligible. *See* GoTV Yellow Br. at 45–63; *see id.* at 45, 51 (discussing '865 patent claim 1). Although GoTV mentions a few claim terms not in claim 1 of the '865 patent, it does not assert that those claim terms would save any claims from ineligibility if claim 1 of the '865 patent is invalid

under § 101.  We therefore can and do focus just on that claim, determining that it is directed to an abstract idea and that no non-conclusory assertion or other evidence establishes any qualifying inventive concept to save it from ineligibility.  All asserted claims are for that reason invalid under § 101.

B

An ineligibility analysis depends on "the language of the [ ] [c]laims themselves." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (internal citation omitted).  Although the specification's (and prosecution history's) recitation of the problem faced and the asserted inventive solution informs the inquiry into what the combination of claimed features is directed to, *see id.* at 767–68; *US Patent No. 7,679,637 LLC v. Google LLC*, ___ F.4th ____, ____, 2026 WL 174922, at *3, No. 24-1520, slip op. at 7 (Fed. Cir. Jan. 22, 2026); *Broadband iTV*, 113 F.4th at 1367, only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter—here, something beyond an abstract idea and sufficient to render the claim eligible, *ChargePoint*, 920 F.3d at 769–70; *see Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024); *AI Visualize, Inc. v. Nuance Communications, Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024); *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020).  The proper understanding of what is claimed, *i.e.*, claim construction, therefore matters for an ineligibility analysis, although at least at some stages of a case a court may *assume* the patent owner's constructions in resolving a motion for judgment of ineligibility.  *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 992–94 (Fed. Cir. 2024).

Here, the district court, adopting GoTV's view, construed "rendering command" to mean, simply, "a description for rendering a page component, such as the width or

the height of the component," explaining specifically that in this context "command" covers a "mere description[]" of what is to be rendered—*i.e.*, a set of specifications for the device to render—and is not limited to "instructions." *Summary Judgment Decision*, at *2–4. The district court did not construe "wireless device generic template"—because the phrase appears only in the '865 patent's claims, which it held indefinite (a ruling discussed just *infra*). *Id.*, at *5. But GoTV has said, without disagreement from Netflix here, that being "generic" simply means not "being specific to a device," relying on the specification's statement that an application "is generic in that it is not specific to any device or any set of device capabilities." GoTV Yellow Br. at 51 n.7 (quoting '865 patent, col. 6, lines 11–13). No definition of "template" has been offered—in particular, GoTV advances no context-specific specialized meaning—so we take the term to have its ordinary common-usage meaning. The district court gave "custom configuration" a broad meaning—"a configuration that determines the look and feel of the application"—disagreeing with Netflix's narrowing of the phrase to "[i]nstructions" and accepting GoTV's proposal but eliminating a redundancy. *Summary Judgment Decision*, at *5–6.[2]

---

[2] The district court also construed "rendering blocks," which does not appear in claim 1 of the '865 patent (but does appear in claim 4 of that patent). It adopted GoTV's construction of the phrase to mean, broadly, "blocks that perform discrete rendering operations," making clear that icons and images are examples of such blocks. *Summary Judgment Decision*, at *6–7. GoTV also refers in this court to the phrase "compiled content," which does not appear in the claims of the '865 patent, but it offers no construction of the phrase or its component "compiled," thus giving it no specialized meaning. We note these terms in

One claim-construction ruling is disputed before us, namely, the district court's conclusion that "discrete low level rendering command" is indefinite. *Id.* at \*4–5. We disagree with that conclusion. We adopt GoTV's construction of that phrase as meaning "[a] discrete rendering command that is tailored based on wireless device capability." *Id.* at \*4.

We decide the indefiniteness and claim-construction issues, both of which are determined by intrinsic evidence only, de novo. *See Teva Pharmaceuticals USA, Inc. v. Sandoz*, 574 U.S. 318, 331 (2015); *Canatex Completion Solutions, Inc. v. Wellmatics, LLC*, 159 F.4th 39, 45 (Fed. Cir. 2025). A claim is indefinite, and hence invalid under 35 U.S.C. § 112(b), only "if [the] claim[], read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997).

The district court rejected GoTV's proposed construction of "discrete low level rendering command" because, in the court's view, that construction would make "superfluous" "significant portions of the specification and claims." *Summary Judgment Decision*, at \*5. In particular, the court substituted GoTV's construction for the claim phrase at issue as it appears in a sentence in the specification, producing: "As such, precompiled basic commands are *discrete rendering commands that are tailored based on wireless*

---

this footnote only, since they do not bear on the eligibility of claim 1 of the '865 patent, a claim GoTV has accepted as representative for eligibility purposes by making no separate argument for other claims.

*device capability* tailored based on the rendering capability of the client 210." *Id.* (italicized GoTV construction substituted for claim phrase). We find this reasoning insufficient to support the conclusion.

If the court found redundancy based simply on the repeated "tailored" word, such a repetition in a substitution exercise is not a substantial basis for deeming a relevant artisan to be confused about claim scope. And that repetition would not occur if the substitution exercise were conducted for the *claim* limitation (which uses "within," not tailored). And if the district court found redundancy by equating "wireless device capability" with "rendering capability," it provided no support for that equation. After all, a wireless device may have various capabilities (such as GPS capabilities and others, *see* '865 patent, col. 11, lines 22–33) beyond rendering capabilities.

There is ample basis in the specification for a relevant artisan to arrive at reasonable certainty about the claim phrase's meaning. The meaning of "rendering command," as noted above, is not in dispute: "a description for rendering a page component, such as the width or the height of the component." *Summary Judgment Decision*, at *2–4. That phrase and its construction do *not* imply tailoring to a particular device, so the additional limitation "discrete low level" is meaningful. And the specification makes reasonably clear the full scope of the entire phrase at issue. One excerpt states:

> Basic commands are precompiled by the server 230 and ready for rendering by the client 210. It is appreciated that **basic commands** are written in a syntax that is device generic regardless of the device type but whose parameters **are tailored based on the wireless device capabilities**. As such, **precompiled basic commands are discrete low level rendering commands** tailored based on the rendering capability of the client 210.

'865 patent, col. 13, lines 18–25 (emphases added). A second excerpt states:

> **Basic commands** are written in a device independent syntax but **tailored based on the wireless device capability. Accordingly, the basic commands are low level** compilation operable to render objects using the plurality of rendering blocks of the wireless device.

*Id.*, col. 3, lines 59–63 (emphases added). *See also id.*, col. 2, lines 51–52 (commands are "of a *generic syntax*" but are "*device specific in their parameters*") (emphases added); col. 11, lines 1–3; col. 13, lines 22–25; col. 18, lines 60–62.

These passages convey that certain commands ("basic commands") are descriptions for rendering a page component ("rendering commands") written in device-independent syntax but tailored (given "parameters") based on the capabilities of the wireless device. Those commands are "precompiled" and "operable to render objects" on the wireless device. The evident upshot is that "discrete low level rendering commands" are descriptions that are tailored for rendering by the wireless device. This construction of "low level" and the phrase as a whole—which is GoTV's construction—is reinforced by additional portions of the specification. *See* '865 patent, col. 2, lines 57–60 ("a custom configuration may be a set of low level instructions for preprogramming . . . rendering blocks" to be received and implemented by the wireless device); *id.*, col. 3, lines 61–63 ("basic commands are low level compilation operable to render objects" on a wireless device); *id.*, col. 3, lines 38–40 (describing how templates are originally "high level" and coded, for example, in an "extensible markup language (XML) format" before being translated to low level commands readable on the wireless device).

We conclude that a relevant artisan, reading the claims in the context of the specification, would understand "discrete low level rendering command" to mean a discrete

rendering command tailored based on the capabilities of the user's wireless device. Accordingly, we adopt GoTV's construction of "discrete low level rendering command," and we reverse the district court's holding that the claims of the '865 patent are invalid for indefiniteness.

C

With pertinent claim constructions in hand, we turn to the two-step analysis of eligibility under § 101. The "directed to" inquiry of *Alice* step one "requires that we look to the character of the claim[] as a whole." *Broadband iTV*, 113 F.4th at 1367; *see also Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). This inquiry "often turns to the question of what the patent asserts as the claimed advance over the prior art." *Broadband iTV*, 113 F.4th at 1367; *see also, e.g., Optis Cellular Technology, LLC v. Apple Inc.*, 139 F.4th 1363, 1379 (Fed. Cir. 2025) (inquiring into "the focus of the claimed advance"); *CosmoKey Solutions GmbH v. Duo Security LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) (same); *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021) (same); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (same); *Solutran, Inc. v. Eavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (same); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257–58 (Fed. Cir. 2016) (same). Within the framework of identifying what a claim is focused on as the asserted advance (not just what it may specify), governing case law recognizes abstractness in several related meanings based on the Supreme Court's precedents—for example, as contrasting with tangibility of implementations of general principles or with concreteness of mechanisms for how to achieve desired results. *See, e.g., Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342–45 (Fed. Cir. 2018).

As relevant here, we have often recognized claims directed to "a longstanding or fundamental human practice" to be directed to an abstract idea, *Broadband iTV*, 113

F.4th at 1367; *see also Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356–57 (Fed. Cir. 2024), and so too claims directed to "the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality," *AI Visualize*, 97 F.4th at 1378; *see also Beteiro*, 104 F.4th at 1355–56. We have also held claims using purely "result-focused functional language, containing no specificity about how the purported invention achieves those results," to be directed to an abstract idea. *Beteiro*, 104 F.4th at 1356; *see also Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (determining that the claims were directed to an abstract idea because the claim language required "the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records'" but did "not sufficiently describe how to achieve these results in a non-abstract way"). And we have made clear that an abstract idea remains an abstract idea even when narrowed—*e.g.*, by subject matter—to a particular use or environment. *See, e.g., Alice*, 573 U.S. at 222; *United Services Automobile Association v. PNC Bank N.A.*, 139 F.4th 1332, 1339 (Fed. Cir. 2025); *Electric Power Group*, 830 F.3d at 1354; *Intellectual Ventures I LLC v. Capital One Bank (USA)* [*IV-Capital One*], 792 F.3d 1363, 1366 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

This case, like many others we have decided, involves networked computers (here, networked servers and wireless devices), their activities, and their communications with each other. Where computer (including network) use is asserted by the patent owner to be what a claim is directed to, we have regularly recognized a crucial distinction based on, among other things, the Supreme Court's treatment of computers and networks in *Alice*. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016) (discussing *Alice*); *buySAFE*, 765 F.3d at 1354–55 (discussing *Alice*). On one side of the line (requiring a determination favoring the patent challenger at step one) are

claims that simply call for the use of computers and networks as tools to carry out an abstract idea, using their ordinary functions without specific hardware or process advances in those functions—*e.g.*, receiving inputs, storing and retrieving, processing, outputting (including displaying), and transmitting.  On the other side of the line (ending the *Alice* inquiry, without proceeding to step two) are claims that call for a concrete asserted improvement in *how* those functions are carried out, which requires more than result-focused functional language and more than just using those functions in the context of specifically identified content.  *See Enfish*, 822 F.3d at 1335–36 (asking "whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., [in that case] the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool"; concluding that "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity"); *see also US Patent No. 7,679,637 LLC*, ___ F.4th at ____, 2026 WL 174922, at *3–4, No. 24-1520, slip op. at 6–9 (stressing the "how" requirement and the insufficiency of "result-focused functional language" and finding claim directed to an abstract idea); *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025); *Beteiro*, 104 F.4th at 1356, 1357, 1359; *Hawk Technology Systems, LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356–58 (Fed. Cir. 2023); *International Business Machines Corp. v. Zillow Group, Inc.* [*IBM-Zillow*], 50 F.4th 1371, 1377–78 (Fed. Cir. 2022); *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022); *TecSec*, 978 F.3d at 1293; *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020); *Customedia Technologies, LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363–64 (Fed. Cir. 2020); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018).

Here, attending to the claim language and taking care to avoid overgeneralizing, *see TecSec*, 978 F.3d at 1293, we conclude that the representative claim is directed to the abstract idea of a template set of specifications—generic in at least some respects (claim 1 requires only two such respects)—that can be tailored (in at least one respect) for final production of the specified product (here an image) to fit the user's constraints.  Outside the image context, the idea is familiar from, say, a pattern specifying many but not all details for a dress or trousers (with tailoring for final production to fit a particular body in limb length or other body dimensions) or a kitchen-cabinet blueprint (tailorable to height and length wall measurements).  *See Beteiro*, 104 F.4th at 1356 (noting the role of "persuasive[] analogi[es]" and that "[a] claimed method's similarity to 'fundamental . . . practice[s] long prevalent' is yet another clue that the claims may be abstract and unpatentable" (quoting *Alice*, 573 U.S. at 219, 220 (omitting further internal quotation marks)).  And this template idea is equally abstract—perhaps especially—for creation of an image display by tailoring to user-specific constraints.  *See IV-Capital One*, 792 F.3d at 1369 ("customizing information based on . . . information known about the user" is "'a fundamental . . . practice long prevalent in our system'" (quoting *Alice*, 573 U.S. at 219)); *see also Beteiro*, 104 F.4th at 1356 (relying on *IV-Capital One*).  Notably, we have recently recognized—in a step-one inquiry involving a patent having priority to 2004, before GoTV's 2007 priority date—that the use of templates for creating a display was not and could not be the claimed advance and hence did not "change the fact that the claims [at issue were] directed to an abstract idea," because template use, by 2004, was already routine and conventional and merely provided a generic environment. *Broadband iTV*, 113 F.4th at 1369.

The claim's calling for collecting and combining information for presentation to the rendering device does not provide a focus on an advance in non-abstract ideas.  As

already noted, the ideas of collecting, storing, organizing, and displaying information are, without more, themselves abstract in character (involving both intangibility and fundamental longstanding practices). And in the present matter particularly, there can be no focus on an advance in this respect, because the information at issue—look-and-feel information about the content plus device-specific constraints—is information that, in the prior art, software developers making from-the-ground-up versions of their applications themselves had to be amassing and combining to arrive at the tailored device-specific set of final image-display specifications rendering by the display device. GoTV makes no meaningful argument to the contrary.

Instead, GoTV argues that this is a case of computer/network improvement. GoTV Yellow Br. at 45–55. But the claims do not call for any new hardware, whether at the server end, the wireless device end, or the networks that connect them. In particular, the claim does not call for an improvement in the wireless device's rendering processes, which it takes as a given (hence the need for tailoring), merely supplying a final set of specifications for rendering within the device's constraints. Nor does the claim call for any improvement in ordinary computer (here, server) functions, such as receiving, storing, processing, outputting, and transmitting.

GoTV refers to the "algorithm" and "architecture" set forth in the claim, *id.* at 49, but those highly general labels, without further identification of details, do not aid GoTV because they can apply to the abstract idea itself—using a template for tailoring the final set of specifications the device uses to put an image on the screen, with use of the ordinary capacity of computers (including a given wireless device) and networks to aid (in automating or speeding up, *e.g.*) that process. When GoTV seeks to be more specific, it refers to a few of the claim terms—either express in the claim or part of the construction of express terms—as requiring "specific data structures." *Id.* at 51; *see also id.* at

45, 48, 53, 55, 56, 61.  But that label is itself too general to aid GoTV.  The specific terms on which GoTV relies do not call for anything about the "structure" (akin to header/payload or bit-slot assignments) of the bit collections transferred between server and wireless device.  As made clear above, *see supra* pp. 4–6, 12–17, all the terms refer simply to packages of information of a particular content, and hence do not escape the abstract-idea category.  There is no improvement of computer/network operations in their ordinary functions, just the use of ordinary functions as a tool for executing the abstract idea.

Thus, GoTV points to "wireless device generic template," GoTV Yellow Br. at 51, but that phrase just recites the abstract idea of a generic template, *i.e.*, a set of specifications for an image that is not specific to a device or the device's capabilities.  GoTV also points to "custom configuration," *id.* at 51, 53, but that broad phrase just recites the abstract idea of a set of specifications that determines the look and feel of particular content on a screen.  Although GoTV gives "specific examples" of what the phrase "can include," *id.* at 53, that recitation logically cannot help GoTV: Abstract ideas routinely encompass concrete examples, so that property does not make the claimed category non-abstract.  GoTV merely adverts to the phrase "page description," *id.* at 51, making no attempt to assert a concrete structural property of the term, *see id.* at 53–55, and the unconstrued phrase broadly covers layout information for what is on the screen.  *See supra* p.5.  GoTV points to "render[ing] commands," GoTV Yellow Br. at 54–55, but that phrase broadly covers a description of something to be rendered by the device—which is abstract and not even arguably an advance.  And GoTV mentions "discrete low level rendering command," *see id.* at 51, which we have construed, at GoTV's urging, to mean broadly a "discrete" description of something to be rendered that has been tailored to the device, *see supra* pp. 14–17—which is an

aspect of the abstract idea.[3] In short, the terms on which GoTV relies, notwithstanding any first-blush appearance of technical specificity, have broad meanings that, individually and taken together, cannot support a conclusion that the claim is directed to a concrete computer/network advance.

The claim at issue here is thus critically different from the claims in *Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), on which the district court relied. The claims in *Visual Memory* were specifically about the characteristics of a computer's memory system, assertedly creating an improvement in this basic component of a computer, the improvement focusing on its interaction with the computer's processor(s)—which is a far cry from claiming mere use of ordinary computer components for a particular subject matter. *Id.* at 1256–62 (explaining basis of decision and why the case was like *Enfish*, which involved self-referential tables in data storage/retrieval, and not like mere use-a-computer cases); *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020). We have often summarized cases lying on one side or another of the important divide regarding computer-based patents. *See, e.g., Beteiro*, 104 F.4th at 1357; *TecSec*, 978 F.3d at 1293–94; *Customedia*, 951 F.3d at 1363–64. This case fits comfortably on the directed-at-abstract-ideas side of the divide.

Under *Alice* step one, we conclude that, contrary to the district court's ruling, claim 1 of the '865 patent and the other asserted claims (of which it is representative for eligibility purposes) are directed to an abstract idea. The

---

[3] GoTV also mentions "rendering blocks" and "compiled content," GoTV Yellow Br. at 54–55, but those terms do not appear in the representative claim and, in any event, supply no concrete computer/network improvement. *See supra* pp. 13–14 n.2.

claims are therefore ineligible under § 101 unless they are saved under *Alice* step two.

D

At *Alice* step two, our inquiry is into whether the claims recite matter that is "an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018); *see Beteiro*, 104 F.4th at 1357. This presents "a question of law that may be 'inform[ed] by '[u]nderlying factual determinations,' such as 'whether a claim limitation or combination of limitations is well-understood routine, and conventional.'" *Beteiro*, 104 F.4th at 1357 (quoting *BSG*, 899 F.3d at 1290). We have explained that this inquiry often overlaps with the step-one inquiry, *see Broadband iTV*, 113 F.4th at 1369; *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018); *Electric Power Group*, 830 F.3d at 1353, and as a practical matter, few of our cases have involved a determination favoring the patent owner at step two after a determination favoring the challenger at step one. But the inquiries are distinct, at least in focus, though they commonly align: Step one focuses on the legal issue of the meaning of the claims and specification (and prosecution history if pertinent), which at least typically "can be answered based on the intrinsic evidence," *CardioNet*, 955 F.3d at 1372; *id.* at 1373–74, whereas step two focuses on often-factual issues of real-world knowledge and practices (within the important legal constraints on what constitutes a qualifying inventive concept, such as not itself being an abstract idea), *see BSG*, 899 F.3d at 1290; *Berkheimer*, 881 F.3d at 1367–68.

In conducting the step-two inquiry, we have repeatedly emphasized that it is not sufficient, in order to pass muster, for a claim to use functional, result-focused language or to encompass ordinary computers and networks to perform their ordinary functions in carrying out an abstract idea,

even when narrowed to a particular use or environment (such as particular subject matter), without going further to require a specific implementation to improve *how* those functions are carried out. *See, e.g., US Patent No. 7,679,637 LLC*, ___ F.4th at ____, 2026 WL 174922, at *3–4, slip op. at 10; *Recentive*, 134 F.4th at 1213; *Beteiro*, 104 F.4th at 1356, 1357, 1359; *Hawk Technology*, 60 F.4th at 1357; *IBM-Zillow*, 50 F.4th at 1377–78; *TecSec,* 978 F.3d at 1293; *buySAFE*, 765 F.3d at 1355. As one consequence, "merely adding computer functionality to increase the speed or efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea." *IV-Capital One*, 792 F.3d at 1370. We also have repeatedly made clear that a conclusory assertion about an inventive concept, including by an expert, is insufficient. *See US Patent No. 7,679,637 LLC*, ___ F.4th at ___, 2026 WL 174922, at *4, slip op. at 10–11; *Beteiro*, 104 F.4th at 1358; *AI Visualize*, 97 F.4th at 1380; *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366 (Fed. Cir. 2023); *Sanderling Management Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023); *IBM-Zillow*, 50 F.4th at 1379–80; *Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

Claim 1 of the '865 patent fails to pass muster at this step of the *Alice* analysis. As we have already described, none of the claim 1 language on which GoTV relies in this court calls for anything but ordinary computers and networks to amass and combine information previously amassed and combined outside a server (according to the patent) to prepare a tailored image description to send to the (unimproved) wireless device for that device to put on the screen by using its own rendering functionality for display. The information gathering and combining are themselves abstract. Any speed and efficiency benefits are those made available by ordinary computers and networks and thus do "not confer patent eligibility on an otherwise abstract idea." *IV-Capital One*, 792 F.3d at 1370. There is no

specificity, in particular no specificity as to how tailoring is done, that might go beyond result-focused functional language.

GoTV points to its expert's testimony about *Alice* step two. GoTV Yellow Br. at 60 (citing J.A. 1286–95). The cited testimony cannot help GoTV. It does not, and could not, identify *claimed* concrete implementations that go beyond the result-focused and functionally described computer processes apparent from the above-recited claim constructions. And conclusory assertions about the speed and efficiency benefits of using ordinary computer and network functionality do not suffice at *Alice* step two.

We therefore conclude that claim 1 of the '865 patent and the other asserted claims (of which it is representative for eligibility purposes) flunk the *Alice* step-two requirement, and the claims are invalid for ineligibility under § 101. Netflix is entitled to judgment of invalidity.

III

The foregoing suffices to end this case in Netflix's favor. We therefore do not decide the merits of GoTV's contentions in its appeal (other than its contention regarding indefiniteness we have discussed). We note, however, that on two of those contentions, GoTV has presented substantial arguments that the district court committed error.

First, GoTV has argued that, contrary to the district court's conclusion, a patentee *may* plead and press an inducement charge in an amended complaint and rely, for the knowledge element of inducement, on the knowledge the defendant gained from the original complaint. GoTV Opening Br. at 20–26. Among the authorities relevant to this issue are an inducement precedent of ours, *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed. Cir. 2012), and a related willfulness precedent, *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). We do not

adjudicate whether GoTV is correct, but we deem its arguments to be sufficiently substantial that it is worth vacating the district court's grant to Netflix of summary judgment of no inducement of infringement.

Second, GoTV has argued that the district court abused its discretion concerning certain presentations by the defendant, Netflix, going to what amount the jury should award based on a hypothetical-negotiation approach to determining a proper reasonable royalty as damages for infringement. GoTV Opening Br. at 33–63. As one part of this argument, GoTV contends, in substance, that, in pretrial evidentiary rulings under Federal Rule of Evidence 702 and in rulings during trial, the district court improperly allowed Netflix to present evidence that was impermissibly far afield from "the core economic question [of] what the infringer in the hypothetical negotiation would have anticipated the profit-making potential of use of *the patented technology* to be, compared to using non-infringing alternatives," *VLSI Technology LLC v. Intel Corp.*, 87 F.4th 1332, 1346 (Fed. Cir. 2023) (internal citation and quotation marks omitted and emphasis added), and that "skew[ed] the damages horizon for the jury," *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011), causing prejudice. We do not adjudicate whether GoTV is correct in this regard, much less in all of its damages-related arguments on appeal. But we deem some of its arguments on the point just noted to be sufficiently substantial that it is worth specifically vacating the district court's denial of GoTV's post-trial motion for a new trial because of such damages-evidence rulings. As with the inducement issue, we need not go further here because Netflix is entitled to judgment in the case regardless.

We do not address GoTV's challenge to how the district court calculated prejudgment interest.

## IV

We reverse the district court's judgment of invalidity for indefiniteness as to the '865 patent, but we also reverse the judgment for GoTV, holding that Netflix is entitled to judgment in its favor in the case because the asserted claims are invalid for ineligibility. We vacate the district court's summary judgment of no inducement and the denial of GoTV's motion for a new trial on damages. Judgment for Netflix ending the case shall be entered in the district court.

The parties shall bear their own costs.

**REVERSED, VACATED IN PART, AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT**